**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM METZER, a dependent and disabled adult,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company d/b/a BLUE CROSS AND BLUE SHIELD OF ILLINOIS,<br><br>Defendant. | ) | Case No. |

**PLAINTIFF'S VERIFIED COMPLAINT FOR**
**<u>VIOLATIONS OF RIGHTS UNDER ERISA 502(A)(1)(B)</u>**

Plaintiff WILLIAM METZER ("William"), a dependent and disabled adult, by and through his attorneys, THE COLLINS LAW GROUP, P.C., brings his verified complaint against Defendant, HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company d/b/a BLUE CROSS AND BLUE SHIELD OF ILLINOIS ("Blue Cross" or "Defendant"), states and alleges as follows:

## INTRODUCTION

1. William is a permanently disabled adult suffering from incomplete cord syndrome of the cervical spinal cord, and spastic quadriparesis. He resides is an Illinois resident with a home address in Elburn, Illinois. Alicia Matz ("Alicia"), his mother, has power of attorney to make decisions on and behalf of her son, William, related to William's medical care and health insurance benefits. Alicia has incurred and has taken the responsibility of paying for William's medical bills, health insurance premiums and litigation expenses.

2. For approximately three (3) years (since August of 2023), William has received home health care, including skilled RN or LPN private duty nursing twenty-four (24) hours per day. Starting in 2025, the in-home nursing care was staffed through a home health care agency known as Elite Care Management, Inc. ("Elite").

3. William is a member under a health care plan administered by Blue Cross. A copy of the health insurance plan is attached hereto as Exhibit A. Under the terms of the applicable insurance policy, Blue Cross is responsible for approving and paying the cost of all medically necessary health care services, subject to valid exclusions, including in home 24-hour skilled nursing care for William when such services are medically necessary.

4. William's health care plan is an Employee Welfare Benefit Plan as defined under 29 U.S.C. § 1002(1) established to provide participants and beneficiaries medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment. The subscriber is William's spouse, Lauren M. Stallings, group number 104111, and the group name is "The Diamondaire Corporation."

5. For the past three years since August 2023, Blue Cross has approved and paid all of William's claims for private duty nursing services provided by Elite. Very recently, Blue Cross suddenly announced they would stop paying William's medically necessary treatment.

## JURISDICTION

6. This Court has federal question jurisdiction in this matter under 28 U.S.C. § 1331, as this action is brought pursuant to the federal Employee Retirement Income Security Act ("ERISA") and thus involves a question of federal law.

7. Under 28 U.S.C. § 1332 and 29 U.S.C. § 1132(e)(2), venue is proper in the Northern District of Illinois, Eastern Division, because this district is where the plan was administered and where the breach took place.

## BACKGROUND

8. On August 7, 2026, Blue Cross notified Plaintiff and Elite that it would not approve continued in-home 24-hour skilled nursing care for William. Elite appealed that claim denial/refusal to pre-authorize continued in home 24-hour skilled nursing care on an expedited basis. Blue Cross denied Elite's appeal on August 27, 2026.

9. William also filed an external (outside) review with a third party Independent Review Organization (IRO), but was similarly denied on September 21, 2026.

10. As a result, all administrative remedies have been exhausted.

11. Currently, William receives skilled nursing care 24-hours per day. That nursing care is medically necessary to address William's complex medical needs and to keep him safe. Blue Cross endangered William and threatened his continued wellbeing when it refused to authorize 24-hour skilled nursing care.

12. Elite has done everything in its power to preserve the continuity of William's in-home nursing care.

13. William has complex medical needs which require in-home nursing care 24-hours per day. (*See* Affidavit of Alicia Matz, attached herein as Exhibit B).

## MEDICAL EVIDENCE

14. Christopher M Tebeau, MD, William's primary care physician, sent two letters of medical necessity ("LOMN") in connection with William's appeals of Blue Cross's decision.

15. According to Dr. Tebeau: "continued skilled nursing care is needed for this patient . . . due to the management of his residual physical condition." (LOMN 1, attached herein as Exhibit C, pages 1–2). "Mr. Metzer continues to require straight bladder catheterization on an As-Needed basis related to urinary retention. This requires skilled nursing for monitoring of bladder emptying and performing the straight catheterization, if needed." *Id.* "Additionally, Mr. Metzer receives topical and oral pain and anxiolytic medications. Nursing assessment and application/administration of these medications is required for appropriate management of these medications." *Id.* "The requested nursing services are medically necessary and required to prevent deterioration, complications, and avoidable hospitalizations." (LOMN 2, attached herein as Exhibit D, pages 1–3). "[T]he patient continues to meet the medical criteria for nursing level care which cannot be safely delegated to lower level care persons." *Id.* "In addition, failure to act appropriately on his physiologic fluctuations puts the patient at risk as a result of his autonomic dysreflexia." *Id.*

16. William's condition has improved, as seen by members of his nursing care team and Dr. Tebeau: "[T]he patient's hospitalizations and emergency room visits have significantly reduced since institution of his current management plan with skilled nursing and would predictably regress without such care." (LOMN 2, attached herein as Exhibit D, pages 1–3).

17. For those reasons, among others, William has received uninterrupted 24-hour in-home nursing care for approximately 3 years.

18. The medical professionals who have treated William support the medical necessity of in-home nursing care for up to 24-hours per day. (*See* Affidavit of Elite's Director of Nursing Gabrielle Savino, RN, attached herein as Exhibit E).

19. Blue Cross, on the other hand, has never met William, or provided hands on medical care or treatment to him, but denied him in-home nursing care at the pre-existing staffing level all the same. This decision was made solely for cost-cutting purposes. There is no legitimate basis or medical support for Blue Cross's unilateral denial of in-home nursing care, which had been approved without interruption for three years. None of the evidence submitted by Elite or from Dr. Tebeau was directly dealt with.

20. Defendant, either directly or through authorized agents, wrongfully denied the in-home nursing care claims submitted by Elite on behalf of William.

21. Blue Cross, through its authorized agents, affiliates, or subsidiaries, was responsible for the wrongful denial in this case.

## THE BLUE CROSS POLICY

22. William's health care plan contains the following relevant definitions:

> MEDICALLY NECESSARY/MEDICAL NECESSITY - means that a specific medical, health care, supply or Hospital service is required, for the treatment or management of a medical symptom or condition and that the service, supply or care provided is the most efficient and economical service which can safely be provided.

(Exhibit A, p. 26).

> SKILLED NURSING SERVICE – means those services provided by a registered nurse (R.N.) or licensed practical nurse (L.P.N.) which require the clinical skill and professional training of an R.N. or L.P.N. and which cannot reasonably be taught to a person who does not have specialized skill and professional training. Benefits for Skilled Nursing Service will not be provided due to the lack of willing or available non-professional personnel. Skilled Nursing Service does not include Custodial Care Service.

(Exhibit A, p. 34).

> PRIVATE DUTY NURSING SERVICE – means Skilled Nursing Service provided on a one-to-one basis by an actively practicing registered nurse (R.N.) or licensed practical nurse (L.P.N.). Private Duty Nursing is shift nursing of 8 hours or greater per day and does

> not include nursing care of less than 8 hours per day. Private Duty Nursing Service does not include Custodial Care Service.

(Exhibit A, p. 32).

> CUSTODIAL CARE SERVICE – means any service primarily for personal comfort or convenience that provides general maintenance, preventive, and/or protective care without any clinical likelihood of improvement of your condition. Custodial Care Services also means those services which do not require the technical skills, professional training, and clinical assessment ability of medical and/or nursing personnel in order to be safely and effectively performed. These services can be safely provided by trained or capable non-professional personnel, are to assist with routine medical needs (e.g. simple care and dressings, administration of routine medications, etc.) and are to assist with activities of daily living (e.g. bathing, eating, dressing, etc.).

(Exhibit A, p. 22).

> LONG TERM CARE SERVICES – means those social services, personal care services and/or Custodial Care Services needed by you when you have lost some capacity for self-care because of a chronic illness, injury or condition.

(Exhibit A, p. 26).

> MAINTENANCE CARE – means those services administered to you to maintain a level of function at which ***no demonstrable and/or measurable improvement of condition will occur***.

(Exhibit A, p. 26 (emphasis added)).

> RESPITE CARE SERVICE – means those services provided at home or in a facility to temporarily relieve the family or other caregivers (non-professional personnel) that usually provide or are able to provide such services for you.

(Exhibit A, p. 34).

23. William's health care plan provides benefits for Other Covered Services, including in-home Private Duty Nursing Service specifically:

> Private Duty Nursing Service—Benefits for Private Duty nursing Service will be provided to you in your home only when the services are of such a nature that they cannot be provided by non-

> professional personnel and can only be provided by a licensed health care Provider. No benefits will be provided when a nurse ordinarily resides in your home or is a member of your immediate family. Private Duty Nursing includes teaching and monitoring of complex care skills such as tracheotomy suctioning, medical equipment use and monitoring to home caregivers and is not intended to provide for long term supportive care. Benefits for Private Duty Nursing Service will not be provided due to the lack of willing or available non-professional personnel.

(Exhibit A, p. 70).

24. Under William's health care plan, the Lifetime Maximum Payment available for benefits, including in-home Private Duty Nursing Services, is unlimited (Exhibit A, p. 86).

25. William's health care plan contains the following exclusions:

> **Hospitalization, or health care services and supplies which are not Medically Necessary.**
> No benefits will be provided for services which are not Medically Necessary. Medically Necessary means that a specific medical, health care, supply or Hospital service is required, for the treatment or management of a medical symptom or condition and that the service, supply, or care provided is the most efficient and economical service which can safely be provided.
>
> . . .
>
> Hospitalization or other health care is not Medically Necessary when, applying the definition of Medical Necessity to the circumstances surrounding the hospitalization or other health care, it is determined that, the medical services provided did not require an acute Hospital Inpatient (overnight) setting, but could have been provided in a Physician's office, the Outpatient department of a Hospital or some other setting without adversely affecting the patient's condition.
>
> . . .
>
> Below are some examples, not an exhaustive list, of hospitalization or other health care services and supplies that are not Medically Necessary:
>
> . . .

> 6. The use of skilled or private duty nurses to assist in daily living activities, routine supportive care or to provide services for the convenience of the patient and/or their family members.

(Exhibit A, p. 107).

26. Custodial Care Service, Long Term Care Service, and Maintenance Care are listed Exclusions under William's health care policy. (Exhibit A, p. 109–10).

27. Blue Cross explained its denial of Private Duty Nursing care as follows:

> Based upon the clinical information submitted, payment for Private Duty Nursing (PDN) services is not authorized or covered. The requested services are considered not medically necessary because they meet the definitions of custodial maintenance, long term and respite care as defined under the member's policy.

(Exhibit F, Denial Letter p. 2).

28. In its decision on appeal, the external review board ignored evidence from both Dr. Tebeau and Elite that William's needs could not be administered on a schedule. Worse, the board concluded that somehow intermittent catheterization and monitoring medication dosages could be delegated to a "less specialized caregiver."

> The records do not establish that these interventions require continuous nursing assessment or cannot be performed by a properly trained caregiver, subject to applicable delegation rules.

(See attached Exhibit G, External Review Board Decision, p. 2).

29. William is not receiving "maintenance care."

30. Furthermore, non-professional personnel could not provide the skilled nursing care William requires throughout the day and on a daily basis.

31. The private duty nursing services which William has received since 2023, and which he requires today, involve skilled services which must be performed by a Registered Nurse ("RN") or a Licensed Practical Nurse ("LPN") under the Illinois Nurse Practice Act, 225 ILCS 65/50-1 *et seq*. Specifically, under 225 ILCS 65/50-15(a): "No person shall practice or offer to

practice advanced, professional, or practical nursing in Illinois . . . unless such person has been licensed under the provisions of this Act." Violation of the Act carries a hefty penalty of up to $10,000 per offense. 225 ILCS 65/50-20.

32. In violation of Illinois law and William's health care plan, Blue Cross has determined that non-professional personnel could provide intermittent catheterization due to neurogenic bladder and clinical monitoring and adjustment of his medication dosages, which William requires throughout the day. Per the denial letter:

> The care you are receiving, such as help with your personal care, and giving your medications and feedings through a feeding tube is considered custodial, maintenance, and long-term care. These services for your chronic medical conditions do not require the clinical skill and professional training of a registered nurse (R.N.) or a licensed practical nurse (L.P.N.).

(Exhibit F, p. 2).

33. According to Blue Cross, William's daily nursing needs are "custodial" or "maintenance" care and, therefore, not medically necessary. This is in direct contradiction to the evidence submitted by Elite and by William's physician, Dr. Tebeau.

## COUNT I
## CLAIM FOR BENEFITS, ENFORCEMENT OF RIGHTS AND CLARIFICATIONS OF RIGHTS TO FUTURE BENEFITS UNDER § 502(a)(1)(B) OF ERISA

34. Plaintiff incorporates paragraphs 1–33 above as if fully restated herein.

35. Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to: (1) enforce all rights under the terms of William's health care plan, (2) clarify William's rights to future benefits under the terms of his health care plan, and (3) recover benefits due under William's health care plan that were wrongfully withheld.

36. As the administrator of the plan, Blue Cross makes all claims determinations and decides all benefit questions under the plan.

37. Blue Cross's decision to deny prior authorization for continued 24-hour skilled nursing care for William is improper and the interruption of 24-hour skilled nursing care places William at sudden risk of imminent bodily injury.

38. William's treating physician has concluded and reported to Blue Cross on multiple occasions that it is medically necessary for William to receive 24-hour skilled nursing care.

39. Plaintiff seeks an order directing Blue Cross to immediately authorize coverage for 24-hour skilled nursing care for William that shall continue until such time as William's skilled nursing care is no longer medically necessary for his care and treatment.

40. Blue Cross has engaged in a pattern or practice of denying William's claims for ongoing PDN, despite Blue Cross paying Elite for 24-hour PDN for William through September 2, 2026. Plaintiff has exhausted multiple appeals regarding the denial of PDN for William, resulting in needless stress and disruption to William and his family and causing an ongoing threat of discontinued PDN.

41. Therefore, in addition to approval of Plaintiff's claim for ongoing benefits, Plaintiff seeks a declaratory judgment as to the meaning of William's health care plan terms as they relate to William's particular situation.

42. In particular, Plaintiff requests that this Court declare:

a. That in-home skilled nursing care is medically necessary under the terms of William's health care plan;

b. That William's in-home nursing care was and is medically necessary, and that Blue Cross must approve 24 hours of in-home nursing care per day under the terms of William's health care plan;

c. That the claims for in-home nursing care submitted by Elite to Blue Cross were wrongfully denied by Blue Cross; and

d. That Blue Cross's interpretation of William's health care plan violates public policy in that it shifts on to unskilled caregivers the burden of providing skilled nursing care that only an RN or LPN may lawfully provide in the State of Illinois under the Nurse Practice Act.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant; that costs of suit and the assessment of attorney's fees be taxed against Defendant as allowed by 29 U.S.C. § 1132(g)(1); and that this Court enter such other and further relief for Plaintiff as allowed by law and as the Court deems equitable and just.

**COUNT II**
**INJUNCTIVE RELIEF**

43. Plaintiff incorporates paragraphs 1–42 above as if fully restated herein.

44. Plaintiff seeks an immediate temporary restraining order ("TRO") that would bar Defendant from terminating coverage of in-home skilled nursing care at the pre-existing level of 24-hours per day.

45. Such injunction is necessary to avoid irreparable injury to William. A loss of in-home nursing care of 24 hours per day would immediately threaten William's health and well-being.

46. Entry of the injunction would preserve the status quo and allow for a continuation of home health care benefits at 24 hours per day until a preliminary injunction hearing is scheduled.

47. On balance, the equities favor the entry of immediate, preliminary and permanent injunctive relief in favor of William, as in-home nursing care was provided without interruption for approximately three years before Blue Cross suddenly changed course and refused to provide

prior authorization for in home skilled nursing care. There is no adequate remedy at law for Defendant's termination of in-home nursing care.

48. Preliminary and permanent injunctive relief should be awarded in Plaintiff's favor, and in home skilled nursing care should be ordered approved for 24 hours per day, as deemed medically necessary by the treating physicians and approved by this Court.

49. Equity, justice and fairness weigh in favor of awarding injunctive relief for Plaintiff, and there would be no public harm in granting Plaintiff such relief since William's health care plan allows for in-home nursing care and such care was provided to William under the terms of the plan for approximately three years.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant; that an injunction be entered which would prohibit Defendant from terminating in-home skilled nursing care at the pre-existing level until a preliminary injunction hearing can be scheduled; that the Court enter preliminary and permanent injunctive relief in favor of Plaintiff, as set forth above; that costs of suit be taxed against Defendant as allowed by law; and that this Court enter such other and further relief for Plaintiff as the Court deems equitable and just.

Respectfully Submitted,
**WILLIAM METZER, a dependent and disabled adult,**

By: ______________________________
One of his Attorneys

Robert L. Dawidiuk (ARDC #6282717)
COLLINS LAW GROUP, P.C.
1770 Park Street, Suite 200
Naperville, IL 60563
(630) 527-9365
rdawidiuk@collinslaw.com
jricci@collinslaw.com

Under penalties as provided by law, I verify under penalty of perjury that the foregoing is true and correct.

Executed on: September 25, 2026

Signed:____________________

Plaintiff William Metzer